UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

JAMES RIVER INSURANCE
COMPANY and CERTIFIED SAFETY,
INC.,
                           Plaintiffs,

-v-

INDIAN HARBOR INSURANCE
COMPANY,
                           Defendant.

18-CV-767 (JPO)

OPINION AND ORDER

---------------------------------------------------------------

J. PAUL OETKEN, District Judge:

    This is an insurance dispute arising out of a fire at a Texas oil refinery that resulted in four personal injury lawsuits. In this suit, Plaintiffs James River Insurance Company (an insurer) and Certified Safety, Inc. (the insured) assert that Defendant Indian Harbor Insurance Company (another insurer) improperly denied insurance coverage for the fire and the resulting lawsuits. The parties have filed cross-motions for summary judgment. For the reasons that follow, summary judgment is granted in part and denied in part.

**I.    Background**

    The following facts are taken from the parties' statements of undisputed material facts. (*See* Dkt. No. 27-29; Dkt. No. 30-37 ("SOF").)

    On January 11, 2016, a fire at a Texas petroleum refinery operated by Marathon Petroleum resulted in injuries, spawning four personal injury lawsuits (the Texas lawsuits). (SOF ¶¶ 15–16.) At the time, Marathon had retained Plaintiff Certified Safety, Inc., a labor staffing company that provides safety attendant workers at its customers' facilities. (SOF ¶¶ 1, 23.) Certified had been hired to perform "hole watch, fire watch, safety, project support, and general labor services" at the refinery. (SOF ¶ 24.)

1

At the time of the accident, Certified had insurance policies with two different insurers: Plaintiff James River Insurance Company and Defendant Indian Harbor Insurance Company. (SOF ¶¶ 2, 9, 12.) Certified's insurance policy with Indian Harbor contained, as relevant here, two coverage provisions. The first, Coverage A, provides that Indian Harbor "will pay on behalf of [Certified] for PROFESSIONAL LOSS which [Certified] becomes legally obligated to pay because of a CLAIM resulting from an act, error, or omission in PROFESSIONAL SERVICES." (SOF ¶ 4.) The term "professional services" is defined to mean "[a]ll professional services rendered in the performance of consulting, training, safety services, and all related services." (SOF ¶ 6.)

The second coverage provision, Coverage B, provides that Indian Harbor "will pay on behalf of [Certified] for POLLUTION LOSS which [Certified] becomes legally obligated to pay as a result of a POLLUTION CONDITION at a JOB SITE, provided that . . . the POLLUTION CONDITION results from CONTRACTING SERVICES." (SOF ¶ 5.) The term "pollution condition" is defined to include "the discharge, dispersal, release, seepage, migration or escape of POLLUTANTS into or upon land, or structures thereupon." (SOF ¶ 6.) The term "contracting services" is defined to mean "[a]ll contracting services rendered in the performance of industrial construction, turnaround and maintenance services." (*Id.*)

On April 5, 2016, Certified notified its insurance agent, Assurance Agency, of one of the Texas lawsuits and instructed Assurance to "convey the . . . lawsuit to [Certified's] GL [general liability] and umbrella carrier ASAP." (SOF ¶ 33.) Assurance immediately forwarded notice of the lawsuit to James River, which accepted the defense of Certified in connection with the Texas lawsuits on April 8, 2016. (SOF ¶ 34.) Assurance did not, however, immediately notify Indian Harbor of the litigation. (SOF ¶ 65.) Assurance eventually relayed notice of the lawsuits to

2

Indian Harbor on May 18, 2017. (*Id.*) Indian Harbor denied coverage on June 14, 2017. (SOF ¶ 66.)

Plaintiffs Certified and James River have filed suit against Indian Harbor. (Dkt. No. 1 ("Compl.").) Plaintiffs seek a declaratory judgment that Indian Harbor is required, under Certified's insurance policy, to defend and indemnify Certified for the Texas lawsuits. (Compl. ¶¶ 25–34.) Plaintiffs also allege breach of contract. (Compl. ¶¶ 35–39.) James River separately seeks recovery of costs incurred in its defense of Certified in the Texas lawsuits. (Compl. ¶¶ 40–46.) The parties have filed cross-motions for summary judgment.[1]

## II. Legal Standard

Under Federal Rule of Civil Procedure 56(a), a court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And an issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## III. Discussion

When there are cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). For the reasons that follow, Plaintiffs' motion for summary judgment is denied

---

[1] Indian Harbor has also moved for oral argument on the cross-motions for summary judgment. (Dkt. No. 34.) Because the Court disposes of both motions in this Opinion and Order, the motion for oral argument is denied as moot.

in its entirety, whereas Defendant Indian Harbor's motion for summary judgment is granted in part and denied in part.[2]

## A. Notice

An initial issue is whether Certified's notice to Indian Harbor was timely under New York law.[3] "Timely notice is a condition precedent to insurance coverage under New York law, and the failure to provide such notice relieves the insurer of its coverage obligation, regardless of prejudice." *Minasian v. IDS Prop. Cas. Ins. Co.*, 676 F. App'x 29, 31 (2d Cir. 2017) (summary order) (citations omitted). In this case, neither Certified nor its insurance broker, Assurance, provided notice of the refinery fire or the Texas lawsuits to Indian Harbor until May 18, 2017 (SOF ¶ 65) — which, as Plaintiffs acknowledge, "would be 'late'" (Dkt. No. 27-30 at 14). In response, however, Plaintiffs argue that Certified provided notice to *Assurance* on April 5, 2016, and that such notice constituted timely notice to Indian Harbor because Assurance was acting as Indian Harbor's agent. *See, e.g.*, *Cambridge Realty Co. v. St. Paul Fire & Marine Ins. Co.*, No. 8-CV-7745, 2010 WL 2399558, at *5 (S.D.N.Y. June 14, 2010) ("'Notice to the broker will constitute . . . notice [to the insurer carrier] if it is established that the broker was acting as the

---

[2] This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1). The amount in controversy exceeds $75,000; and Plaintiffs are citizens of Ohio, Virginia, and Texas, while Defendant is a citizen of Delaware and Connecticut. (Compl. ¶¶ 5, 8, 11, 12.)

[3] Plaintiffs argue that Texas law, and not New York law, governs the issue of timely notice. The insurance policy's choice-of-law clause, however, provides that "[a]ll matters arising hereunder including questions or disputes related to the validity, interpretation, performance and enforcement of this Policy will be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules)." (Dkt. No. 27-2 at 27.) Plaintiffs' claims sound in contract; thus, the choice-of-law clause governs the issues of notice and agency. *See Klock v. Lehman Bros. Kuhn Loeb Inc.*, 584 F. Supp. 210, 215 (S.D.N.Y. 1984) ("[I]t has been held in New York that a contractual choice of law provision governs . . . a cause of action sounding in contract."); *cf. Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 335 (2d Cir. 2005) (noting that New York courts are "reluctan[t] . . . to construe contractual choice-of-law clauses broadly to encompass extra-contractual causes of action").

carrier's agent' under actual or apparent authority." (quoting *Bennion v. Allstate Ins. Co.*, 727 N.Y.S.2d 222, 224 (N.Y. App. Div. 4th Dep't 2001))).

The issue, then, is whether Assurance was acting as Indian Harbor's agent — an issue that turns on the existence of "words or conduct of the principal [indicating] that the principal has consented to the agent's performance of a particular act." *Minskoff v. Am. Exp. Travel Related Servs. Co.*, 98 F.3d 703, 708 (2d Cir. 1996). Relevant indicia of agency include the authority to renew the policies of insured parties on behalf of the insurer, to accept premiums on behalf of the insurer, and to accept loss notices on behalf of the insurer. *See Green Door Realty Corp. v. TIG Ins. Co.*, 329 F.3d 282, 289–90 (2d Cir. 2003). The existence of such authority is "normally a question of fact" that is "inappropriate for resolution on a motion for summary judgment." *Id.* (quoting *Minskoff*, 98 F.3d at 708).

This case is no exception. The parties dispute, for example, whether Assurance prepared claim notice documents on behalf of Indian Harbor and whether Indian Harbor accepted notice of claims received by Assurance in other cases. (*See* Dkt. No. 29 at 12–14; Dkt. No. 31 at 9–10.) Given the conflicting evidence of an agency relationship, summary judgment for either side on the issue of notice is unwarranted.

**B. Coverage**

Next is the issue of coverage. Under New York law,[4] Plaintiffs face an "initial burden" to establish coverage under the insurance policy with Indian Harbor. *Consol. Edison Co. of N.Y. v. Allstate Ins. Co.*, 774 N.E.2d 687, 690 (N.Y. 2002). "[A]n insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *Parks*

---

[4] Neither party disputes that New York law governs the interpretation of the insurance policy. (Dkt. No. 28-1 at 18–19; Dkt. No. 29 at 21–22.)

5

*Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) (quoting *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000)). "When the provisions are unambiguous and understandable, courts are to enforce them as written." *Id.*

The Indian Harbor policy provides, as applicable here, coverage for professional services liability (Coverage A) and contractor's pollution liability (Coverage B). (SOF ¶ 3.) Factual uncertainty about the precise nature of the services provided by Certified bars summary judgment for either side on the applicability of Coverage A. But the undisputed facts indicate that Coverage B lacks application to Certified's claims. Thus, summary judgment on the applicability of Coverage B is granted to Indian Harbor.

### 1. Professional liability

Coverage A of the Indian Harbor policy provides coverage for "a CLAIM resulting from an act, error or omission in PROFESSIONAL SERVICES" (SOF ¶ 4), where "professional services" is defined as "[a]ll professional services rendered in the performance of consulting, training, safety services, and all related services" (SOF ¶ 6). Under the contract, then, insurance coverage exists only if the services provided by Certified were "professional" in nature.[5]

---

[5] Plaintiffs read the policy differently. They argue that the policy bifurcates the definition of "professional services" to encompass either (1) "[a]ll professional services rendered in the performance of consulting, training, safety services" or (2) "all related services." (Dkt. No. 32 at 8.) Thus, Plaintiffs argue, "professional services" include all services that bear some relationship to "consulting, training and safety services," irrespective of whether they are professional in nature. (*Id.*)

This badly misreads the policy. First, "all related services" is a generic term that is best read to attach to the list "consulting, training, [and] safety services," which means that any covered "related" service must still be "professional" in nature. Second, even if — as Plaintiffs insist — "all related services" were a free-floating term, any covered service would still have to be "related" to a "professional service[] rendered in performance of consulting, training, [or] safety service[]," which means that a "related service" must still be "professional" in nature.

The insurance policy does not define the term "professional." "In the absence of guidance from the policy language, courts ask whether a body of law or an established custom or usage provides a definition." *Beazley Ins. Co. v. ACE Am. Ins. Co.*, 880 F.3d 64, 69 (2d Cir. 2018). And, indeed, "professional" carries a well-established meaning under New York law: "[T]he question of whether one is engaged in a professional service depends on whether those individuals 'acted with the special acumen and training of professionals when they engaged in the acts . . . .'" *Id.* (alterations in original) (quoting *David Lerner Assocs., Inc. v. Phila. Indem. Ins. Co.*, 934 F. Supp. 2d 533, 541 (E.D.N.Y. 2013)). A "professional" service demands something beyond "normal powers of supervision and observation." *Reliance Ins. Co. v. Nat'l Union Fire Ins. Co.*, 691 N.Y.S.2d 458, 460 (N.Y. App. Div. 1st Dep't). To make this determination, a reviewing court examines "the nature of the conduct under scrutiny rather than the title or position of those involved." *Reliance*, 691 N.Y.S.2d at 460 (quoting *Camp Dresser & McKee, Inc. v. Home Ins. Co.*, 568 N.E.2d 631, 634 (Mass. App. Ct. 1991)).

Here, factual uncertainty about the precise nature of the services rendered by Certified and its employees bars summary judgment for either side. It is undisputed that Certified's safety attendant employees were providing "hole watch" and "fire watch" services at the refinery. (Dkt. No. 29-1 at ¶ 71.) But the scope of their responsibilities is in dispute. Indian Harbor avers that the employees were merely "tasked with monitoring the ingress and egress of personnel . . . and to watch for sparks." (Dkt. No. 29-1 at ¶ 73.) Plaintiffs, on the other hand, submit that the employees were specially trained to use fire suppression equipment (*id.*) and to spot "potential

---

Plaintiffs argue that this definition does no work by "effectively equat[ing] 'professional services' with 'professional services.'" (Dkt. No. 32 at 9.) Not so. The policy limits the definition of "professional services" to only those professional services "rendered in the performance of" consulting services, training services, safety services, or all related services. Thus, the presumption against superfluity has no application.

7

fire hazards" (Dkt. No. 29-1 at ¶ 1). Further, while it is undisputed that Certified's employees are required to complete a "two-day training course that consists of administrative training, safety attendant training, and hands-on and agility training" (Dkt. No. 29-1 at ¶ 80), the record provides no further detail about the nature of that training.

On this murky factual record, a reasonable jury might conclude that Certified's employees were acting "with the special acumen and training of professionals." *Beazley*, 880 F.3d at 69. But a reasonable jury could also conclude that that the employees were merely employing "normal powers of supervision and observation." *Reliance*, 691 N.Y.S.2d at 460. Thus, neither side has met its burden of establishing an entitlement to judgment as a matter of law. Summary judgment for both sides on this issue is denied.[6]

### 2. Pollution liability

Coverage B of the Indian Harbor policy provides that Indian Harbor "will pay on behalf of [Certified] for POLLUTION LOSS which [Certified] becomes legally obligated to pay as a result of a POLLUTION CONDITION at a JOB SITE, provided that . . . the POLUTION CONDITION results from CONTRACTING SERVICES." (SOF ¶ 5.) The term "pollution condition" is defined to mean "the discharge, dispersal, release, seepage, migration or escape of POLLUTANTS into or upon land, or structures thereupon." (SOF ¶ 6.) The term "contracting services" is defined to mean "[a]ll contracting services rendered in the performance of industrial construction, turnaround and maintenance services." (*Id.*)

---

[6] Plaintiffs separately argue that Indian Harbor waived it ability to deny coverage under Coverage A because it never notified Certified of the grounds for denial. (Dkt. No. 29 at 18–19.) This argument finds no support in the factual record. Indian Harbor's initial denial of coverage asserted that, "to the extent that any damages are awarded that do not arise from PROFESSIONAL LOSS and PROFESSIONAL SERVICES as defined above, coverage is not afforded." (Dkt. No. 27-18 at 4.) That statement provided sufficient notice of Indian Harbor's intent to disclaim coverage.

8

For Plaintiffs to prevail, then, they must show that the "pollution condition" — that is, the refinery fire and the resulting smoke, soot, and vapor[7] — was somehow caused by Certified's "contracting services." They have not made this showing. Plaintiffs assert only that Certified's use of an inadequate fire alarm was a "substantial contributing factor to exposing the injured to the spread of the smoke, soot and vapors from the fire." (Dkt. No. 29 at 24 (internal quotation marks omitted); *accord* Dkt. No. 32 at 12.) But the plain language of the insurance policy requires that Certified's services cause the "pollution condition" itself. And Plaintiffs make no showing that Certified played a role in causing the initial fire or the resultant spread of smoke, soot, and vapor. (*See* Dkt. No. 29 at 24; Dkt. No. 32 at 12.)

On the undisputed facts, then, Indian Harbor is entitled to judgment as a matter of law that Coverage B does not apply to Certified's claims. Summary judgment on this issue is granted to Indian Harbor.[8]

## IV. Conclusion

For the foregoing reasons, Plaintiffs' motion for summary judgment is DENIED. Defendant's motion for summary judgment is GRANTED in part and DENIED in part. Defendant's motion for oral argument is DENIED as moot.

---

[7] Because summary judgment is granted to Indian Harbor on the issue of causation, the Court need not reach whether the refinery fire involved losses resulting from a "pollution condition." (*See* Dkt. No. 28-1 at 28–30; Dkt. No. 29 at 23–25; Dkt. No. 31 at 11–13.)

[8] Because Plaintiffs' motion for summary judgment is denied on the issue of coverage, Plaintiffs are also denied summary judgment on the issue of James River's entitlement to reimbursement from Indian Harbor. (Dkt. No. 27-30 at 25–29.)

The Clerk of Court is directed to close the motion at Docket Numbers 27, 28, and 34.

SO ORDERED.

Dated: October 31, 2019
       New York, New York

_____
J. PAUL OETKEN
United States District Judge